Proceed to the fifth case, United States v. Terronez. Mr. Mullins. Good morning. May it please the court and opposing counsel. My name is Brian Mullins. I represent Gregory Terronez on his direct appeal from his sentence of 110 months for possessing a firearm after he had been convicted of a felony. That sentence was at the low end of the guideline range, which was 110 to 120 months, given the statutory maximum of 10 years. We raised four issues for arguments and mitigation for a sentence variance from the guideline range. The issue that we have raised on appeal is that the district court procedurally erred by not adequately considering Mr. Terronez's argument that the base offense level under 2K2.1 of the sentencing guidelines, in his case, overstated the seriousness of the offense and overstated the threat that he presented with a firearm. The guidelines use prior convictions as proxy for, I think it's fair to say, as a proxy for a person's threat that they present with a firearm. The two classes of prior convictions that the guidelines use to increase the base offense level are crimes of violence and controlled substance offenses. The use of controlled substance offenses has been criticized by at least one person for using a firearm, and the use of controlled substance offenses are not all necessarily violent, and all controlled substance offenses really are not created equally, so in some cases, according to some authorities, the base offense level can overstate the degree of harm that a person presents by possessing a firearm. In this case, as applied to Mr. Terronez, we argue that this was one of those cases because his two prior controlled substance convictions were nonviolent and did not involve use of a firearm. But the court said he took that into account. Well, we don't believe that the court did because the court specifically said, I recognize that you have a limited history of violence if it's even conceded, and I'm not even considering whether you do or not to tell you the truth. So I think that statement contradicts any suggestion that the court took into account Mr. Terronez's lack of a history of violence with either actual violent offenses or even possessing a firearm in prior offenses or in prior drug offenses. And it is that statement by the district court that we believe is the most clear evidence that... The next sentence, Mr. Mullins, says that I realize you said that to me and you're not a violent person. I don't have any reason to doubt that, except there's only one reason, to possess a firearm in the trade of either small or large drug dealing. So does he, in the second sentence, accept the premise that the representation that he's not a violent person? Well, I think he's assuming that he only possessed the gun to use. I understand that that was the assumption that was made by the court and in connection with drug dealing based on, I suppose, his prior controlled substance offenses. However, there was no evidence of possessing the gun in this case in connection with drug dealing. There were no drugs found on Mr. Terronez when he was arrested and he has no prior history of using a gun in connection with drug dealing. So it was an assumption the court made that could apply to really any person, any defendant who is charged with possessing a firearm and who has prior convictions for controlled substance offenses. And we believe that that kind of general assumption is not specific enough under 3553 to account for Mr. Terronez's history and characteristics. Well, counsel, I'm looking at appendix page 12. I believe I did address them, maybe not specifically. I did factor them in with your arguments and I appreciated your arguments and said that in some circumstances, maybe even a variance to 84 months might be appropriate, but not in this case. And then he goes on to talk about the obliteration of the serial number and the factor of your argument about double counting. The guidelines simply state otherwise. I didn't discount the argument, but I didn't accept it for purposes of the variance. We're not arguing that the district court did not adequately consider the serial number issue or the double counting issue, just the base offense level related to 2K2.1 and using those controlled substance offenses to increase the base offense level. So we're not arguing that those other issues weren't adequately addressed. A number of issues were raised by the government related to statistics that Mr. Tarangas did not provide or did not sufficiently distinguish himself from the average offender. And as we said in our reply brief, those statistics were not relied on by the government. So I think the, I'm sorry, by the district court. So I think the government is somewhat providing a post hoc rationalization for the district court's findings. But I think the district court or the government is implicitly arguing that the guidelines are entitled to a presumption of reasonableness by requiring the defendant to present why he presents a unique circumstance. And that is not permissible at the district court level at sentencing. And then the other statistics cited by the government related to how Mr. Tarangas is a criminal history category six defendant and a firearms offender. Those are all, we don't dispute those statistics, but those don't address whether district court adequately considered his request for a variance. And those statistics did not really concern whether those defendants received a variance. So they really are not relevant to the issue of whether a variance was considered by the district court. And since the government did open the door to discussing statistics, we believe it is worth noting that one third of all cases in 2018 of cases sentenced under 2K2.1 resulted in a downward variance and that was for reasons other than substantial assistance, which raises, I think, a concern that there is a structural problem with this guideline that we are addressing and that, in this case, deserved more attention from the district court than it received. I'll reserve the rest of my time. May it please the court, Mr. Mullins, I'd like to start with Mr. Mullins' statement that our use of statistics in our responsive brief was an attempt possibly to post hoc rationalization to support the sentence or the judge's rationale. That wasn't why we cited statistics. I think when a defendant makes the argument that I am different, that this is unique because I'm nonviolent, because I'm not a major drug trafficker, implicit in that argument is that he is different than the people that are sentenced at a base offense level 24. And when you have 18,600 defendants since 2002 who have been sentenced at a base offense level of 24, I don't know how much different he is, that there have to be many among that that may have lower level drug trafficking convictions that have resulted in a base offense level of 24. And so we were examining how does he compare to other offenders. At the heart of his argument, really, without contrasting or showing himself unique, is he is making a policy argument against the guidelines range. The Fogel case on which he relies out of the Eastern District of Wisconsin goes through and argued, or not argued, ruled that it's not empirically based. And so he takes the Fogel case that says this base offense level increase for prior drug trafficking offenses is not empirically based, and then says, as applied to me, it overstates. There needs to be more than just saying, as applied to me. There needs to be more than just saying, I'm a lower level drug offender. I don't have a history of violence. The more needs to be showing how he's different from others that have a base offense level of 24 based on prior drug offenses or prior controlled substance offenses. But regardless, we believe that the district court did address his argument in mitigation and just disagreed with it. A judge can do so implicitly and can do so imprecisely. And perhaps that is what Judge Shadid caught himself at the end saying, I thought I did address it by addressing the 3553A factors. And what this court, this district court, found important is that there is a volatile mixture of those involved in drugs and possessing a firearm. Now, Mr. Mullins is correct on this particular incident. Is there is there an indication that he had drugs on him? No, no drugs were recovered from him after he fled from the police and through the firearm. But what we do know, based on the report that he submitted, is that he continued to engage in illicit drug trafficking after his 2017 release from prison. He's someone with four prior felony drug convictions, two of which are for trafficking, and then gets out of prison and recommences his drug trafficking. So the court, district court, was properly concerned about someone like this defendant who engages in this trade and also possesses a firearm and then expressing the truism that there is a volatile mixture of guns and drugs. And what I find interesting about his argument is that, well, that that truism expressed by the district court is the same for any defendant that has a prior conviction for drug trafficking. And that may be true, except that this defendant continued in drug trafficking after his release. But more importantly, to fault the court for using an argument or for using reasoning that applies to many, when he offered no argument to show himself unique among the many, is not a procedural error. The court considered the 3553A factors. In doing so, acknowledged the sentence he was requesting, acknowledged that, yes, you don't have a violent history, acknowledged that, yes, I understand that your drug trafficking crimes are not higher level drug trafficking crimes, but still, I believe this to be the appropriate sentence. He gave this court reasoning to review and to affirm his judgment. And that is what he has to do. He acknowledged the principal argument, he rejected it. And within the guideline sentence, it need not be a long explanation by the district judge. For those reasons, we would ask that you affirm the judgment of the district court, unless there are other questions. Thank you, Mr. Walter. Thank you. I just wanted to briefly address the distinction between a blanket policy challenge and an applied, as applied challenge. I don't think any challenge to a guideline sentence will be effective without some discussion of the policy behind the guideline. And if you're going to critique why a guideline in a particular case should not be applied, I think there has to be some kind of critique of the policy underlying the guideline. And if that can be supported by case law or the sentencing commission's reports, so much the stronger. So I think there certainly is always a partially a policy challenge to a guideline. But then how in this case, and as applied to this defendant, the policy underlying the guideline is not appropriate and results in a sentence greater than necessary to achieve the 3553 factors. And we believe that's what we did here by pointing out Mr. Walters' convictions did not concern violence. And unless there are further questions, we'll rest on our brief. Thank you, Mr. Walter. Thank you. The court will take a 10 minute recess.